**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE POWERS, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:19-cv-21970 (BRM) <br><br> OPINION |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is an appeal by Plaintiff Jacqueline Powers ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having considered the submissions of the parties without oral argument, pursuant to L.Civ.R. 9.1(f), and for the reasons set forth in this Opinion and for good cause shown, the Commissioner's decision is **AFFIRMED**.

I. **BACKGROUND**

    A. **Factual Background**

This case arises out of Plaintiff's challenges to administrative decisions by the Social Security Commissioner regarding her application for disability insurance benefits, alleging disability stemming from an injury sustained in December 2009. (Tr. 166–72.) This appeal follows two prior civil actions pursued by Plaintiff concerning her eligibility for disability insurance. (Tr. 166–72.)

1

### B. Procedural History

On August 31, 2011, Plaintiff's claim was denied, but on reconsideration, a state agency psychiatrist found Plaintiff was disabled as of May 15, 2011, with a severe mental impairment due to marked and moderate limitations in her mental functioning. (Tr. 64–66.) Plaintiff then requested a hearing to contest the Commissioner's denial of disability between December 11, 2009, and May 15, 2011. (Tr. 88–89.)

On August 15, 2013, a hearing was held before Administrative Law Judge ("ALJ") Joseph Hillegas who determined Plaintiff was not disabled during the period in question and that she could perform her past relevant work as a teacher's assistant. (Tr. 20–21.) Thereafter, Plaintiff timely commenced action in this Court and, on June 28, 2016, Chief Judge Freda Wolfson vacated ALJ Hillegas's decision that found Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work between December 11, 2009 and May 15, 2011. (Tr. 526–51). Chief Judge Wolfson, in remanding the matter found that the decisional RFC lacked substantial evidentiary grounds and that "the ALJ erred in rejecting uncontradicted medical opinion of plaintiff's treating physicians." (Tr. 525–78.)

On August 26, 2016, the Appeals Council remanded, vacating the prior final decision and ordered a new hearing consistent with Judge Wolfson's order, "but only as it relates to the period prior to May 15, 2011." (Tr. 581–83.)

On March 1, 2017, after a second hearing was held, ALJ George Yatron found Plaintiff was not disabled between December 11, 2009 and May 15, 2011 and was capable of performing light work during that period. (Tr. 453–63.) After consulting a vocational expert, ALJ Yatron determined Plaintiff could not perform her past work as a teacher's assistant but concluded that other jobs in the national economy existed in significant numbers that Plaintiff could perform such as assembler,

conveyor line bakery worker, lens inserter, and table worker inspector. (Tr. 457–58). Plaintiff again appealed the decision. (Tr. 730–31, 734–35.)

On December 6, 2017, Judge Wolfson signed the parties' consent order thereby vacating ALJ Yatron's decision and remanding the matter to further evaluate Plaintiff's impairments including reviewing Plaintiff's alleged symptoms and reevaluating Plaintiff's RFC. (Tr. 730–31, 734–35.) On remand, the Social Security Appeals Council ordered a new hearing to resolve the lack of evidentiary support in ALJ Yatron's decision that Plaintiff could perform "light work not involving detailed job instructions"; to consider Plaintiff's alleged symptoms and "provide rationale in accordance with the disability regulations"; to evaluate all medical evidence in the record pertaining to the period between December 11, 2009 and May 15, 2011; and to further consider Plaintiff's maximum RFC during the pertinent period. (Tr. 734–35.)

On July 10, 2019, ALJ Karen Shelton held another hearing and found that Plaintiff was unable to perform her past relevant work as a childcare attendant. (Tr. 699.) ALJ Shelton also found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform sedentary work in several occupations that existed in significant numbers in the national economy. (Tr. 696–700.) She concluded Plaintiff was not disabled within the meaning of the Act from her alleged December 11, 2009 onset date through May 15, 2011—the onset date of her disabling psychiatric impairments. (Tr. 699.)

More specifically, on August 28, 2019, ALJ Shelton found that, at step three, Plaintiff suffers from a severe impairment—degenerative disc disease—that significantly limited her ability to perform basic work activities. (Tr. 696.) ALJ Shelton then found Plaintiff's other alleged afflictions for mental disorder, interstitial cystitis, pelvic floor dysfunction, and vulvodynia—considered individually or in combination—were not severe and caused no more than minimal limitations on her

ability to perform sedentary work. *Id.*

At step four, ALJ Shelton found Plaintiff retained the RFC to perform sedentary work pursuant to 20 CFR §404.1567(a) but Plaintiff's RFC precluded Plaintiff from climbing ladders or scaffolds, kneeling, crouching, or crawling. (Tr. 697–99.) These RFC limitations prevented Plaintiff from standing and walking more than two hours in an eight-hour workday—working two hours before needing a break—and occasionally "lifting and carrying 10 pounds . . . and less than 10 pounds frequently." (Tr. 697–99.) In so finding, ALJ Shelton determined Plaintiff's limitations precluded her from performing any past relevant work as a childcare attendant. (Tr. 699.)

At step five, ALJ Shelton found Plaintiff's ability to perform sedentary work was "impeded by additional limitations" but could, based on the testimony of a vocational expert, "perform the requirements of representative occupations such as final assembler, DOT 713.687-018, sedentary exertional level, . . . approximately 330,000 jobs nationally, lens inserter, DOT 713.687-026, sedentary exertional level, . . . compact assembler, DOT 739.687-066, sedentary exertional level, . . . approximately 115,000 jobs nationally." (Tr. 700). ALJ Shelton, therefore, concluded Plaintiff was not disabled during the relevant period between December 11, 2009 through May 15, 2011.

## II.   STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision

if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

### III. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416 .920(a)(1). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful

activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146–47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at 146–47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. § Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146–47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679–80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is

capable of performing work and is not disabled." *Id.* (citation omitted). Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen*, 482 U.S. at 146–47 n.5). An administrative law judge bears the burden of proof for the fifth step. *See id.* at 263.

As to the harmless error doctrine, the Supreme Court explained its operation in a similar procedural context in *Shinseki v. Sanders*, which concerned review of a governmental agency determination. 556 U.S. 396, 408–411 (2009). The Supreme Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* at 409. In such a case, "the claimant has the 'burden' of showing that an error was harmful." *Id.* at 410.

For the first four steps, the harmless error doctrine requires a plaintiff to show: 1) that an error occurred; and 2) but for that error, she might have proven her disability. In other words, when appealing a decision at the first four steps, a court considers whether the plaintiff articulated a basis for a decision in her favor, based on the existing record. If the plaintiff cannot, it is unlikely she will meet her burden of showing that an error was harmful.

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the

Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing 42 U.S.C. § 405(g)).

**IV. DECISION**

Plaintiff asks this Court to vacate ALJ Shelton's decision and to remand for a new decision arguing, principally, that the RFC determination was not based on substantial evidence because it ignores relevant evidence from treating physicians and lacks reference to Plaintiff's testimonial representations regarding her condition, treatment, and work limitations. (ECF No. 14 at 12.) Plaintiff argues reversal and remand is warranted for main two reasons: (1) that the ALJ failed to incorporate the opinions of treating physicians into its analysis of the administrative decision; and (2) that the ALJ erred when he allegedly did not base his findings on substantial evidence.

Plaintiff's case on appeal falters in two main respects: (1) its failure to carry the burden of proof at the first four steps of the sequential evaluation process; and (2) its failure to deal with the harmless error doctrine. As to the burden of proof, Plaintiff bears the burden in the first four steps of the analysis to demonstrate how her impairments, whether individually or in combination, amount to a qualifying disability. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Plaintiff argues, in general, that the ALJ failed to follow the Court's June 2016 remand order or refer to Plaintiff's testimony. However, Plaintiff fails to explain how she was materially harmed. Therefore, Plaintiff fails to meet the standard established in *Shinseki*. It is not enough to show the presence of an error. Indeed, pursuant to *Shinseki*, it is Plaintiff's burden to prove she was harmed by the alleged errors. *See* 556 U.S. at 409. Plaintiff's brief fails to prove this; instead, Plaintiff argues only that the ALJ erred. No demonstration is made that any alleged error was material and prejudicial. Not only must Plaintiff meet her burden for proof of disability at the first four steps; *Shinseki*, at the appeal stage, additionally requires that Plaintiff show that an error was harmful. *Id.* As explained

9

below, none of Plaintiff's arguments satisfy the requirements of *Shinseki*. Without showing that an error was harmful, this Court concludes Plaintiff has not satisfied the requirements of *Shinseki*.

As an initial matter, it is not clear from Plaintiff's brief which prior RFC decision she is challenging, as Plaintiff does not point to a specific step in the sequential process from which the ALJ erred, but instead makes an argument challenging an RFC decision at step four. Plaintiff's first argument takes objection with "the March 1, 2017 subsequent administrative decision *under current review*" for ignoring the opinions of treating physicians. (ECF No. 14 at 16) (emphasis added). As outlined earlier, the procedural history of this matter concerns multiple and divergent RFC determinations by different ALJs. The Commissioner argues that ALJ Shelton did not repeat the errors of the ALJ decisions. (ECF. No. 15 at 10–11.) Therefore, before proceeding, this Court must address Plaintiff's assertion.

ALJ Yatron's March 1, 2017 administrative decision was vacated following the parties' consent order to remand the matter for a third hearing. The third hearing took place on July 10, 2019, and resulted in ALJ Shelton's August 28, 2019 decision, which is the administration decision concerned here. In that proceeding, ALJ Shelton found Plaintiff had the RFC to perform, specifically finding Plaintiff was capable of:

> sedentary work as defined in 20 CFR 404.1567(a) except lifting and carrying 10 pounds occasionally and less than 10 pounds frequently, stand and walk for 6 of 8 hours, sit for 6 of 8 hours. No ladders, ropes or scaffolds, no kneeling, crouch, or crawling. Limited to simple instructions and simple work decisions in a routine environment and can work for 2 hours before needing a break.

(Tr. 697.)

Apparently challenging the vacated March 2017 administrative decision, Plaintiff argues the administrative decision fails to mention and give "adequate weight" to the medical evidence from

10

treating physicians Drs. Botwin, Novik, and Ho. (ECF No. 14 at 16.) Plaintiff also relies heavily on the June 2016 remand opinion. In particular, she argues that while the Court recounted her testimony, the administrative decision is devoid of reference to her testimony "taking no note of plaintiff's treating doctor, the condition of her neck (and back) pre-surgery, and reciting none of her prior testimony." (*Id.* at 19–20.) Since the Court failed to appreciate the foregoing, Plaintiff contends the RFC finding is unreviewable. (*Id.* at 20.) This Court disagrees and first addresses her emphasis on the June 2016 remand opinion before turning to whether ALJ Shelton's decision was supported by substantial evidence.

Significantly, Plaintiff makes no reference to ALJ Shelton or her August 2019 findings and instead relies on quoting heavily from the Court's June 2016 remand opinion. In that opinion, Judge Wolfson found that ALJ Hillegas—not ALJ Shelton whose decision is the focus here—erred in rejecting Plaintiff's treating physician's opinions when determining that she exhibited no exertional limitations. Relevant to Plaintiff's argument, the Court at that time found that there was no conflict between the medical opinions of Drs. Botwin, Novik, and Ho who all observed Plaintiff had exertional limitations in April 2011. (Tr. 548–49.) Judge Wolfson noted that uncontradicted medical evidence pointed to possible exertional limitations between April 2011 and May 2011. She recognized this represented a brief period of time, but a period of time that nonetheless encompassed the period of disability Plaintiff challenges here. (Tr. 549.)

Nevertheless, worth noting are other observations the Court made in the 2016 remand opinion that Plaintiff overlooks and does not address anywhere in her argument. Despite vacating ALJ Hillegas's decision on substantial evidence grounds, the Court recognized that Plaintiff continued to work from December 2009 to March 2010 and that Plaintiff represented "that she was able to work . . . from approximately October 2011 to April 2011." *Id.* Plaintiff did not seek treatment to manage

11

her pain until April 2011 prior to which she suffered only "minimal" or "mild" symptoms. *Id.* In remanding this matter to consider whether Plaintiff's RFC should have included the observations of the three doctors mentioned above, the Court also determined that Plaintiff should produce "any and all medical records that she contends exist to support any exertional limitations she claims she has experienced at any time during the alleged period of disability from December 11, 2009 to May 15, 2011." *Id.* Here, the question then becomes, whether the error identified in the June 2016 remand order was repeated by ALJ Shelton. This Court finds that the error was not repeated and further finds that ALJ Shelton's decision regarding Plaintiff's RFC was supported by substantial evidence.

The record reveals ALJ Shelton reviewed the "treatment records" from Dr. Novik from April 2011 who noted Plaintiff's reduced range of motion and cervical degenerative disc disease. *Id.* ALJ Shelton then took into consideration Plaintiff's reported "trigger point injections, physical therapy," and epidural treatments that Plaintiff claimed did not significantly alleviate her ailments. *Id.* Moreover, despite Plaintiff's contention to the contrary, ALJ Shelton's decision considered the findings of treating physician Dr. Novik—therefore, significantly undermining one of Plaintiff's chief arguments that Dr. Novik's opinion was not mentioned. (ECF No. 14 at 16.)

ALJ Shelton also cited to Dr. Whitmore who treated Plaintiff's interstitial cystitis and pelvic dysfunction characterizing her condition "as stable on September 13, 2010." (Tr. 696). That same doctor treated Plaintiff on April 18, 2011, and observed that Plaintiff's bladder scan showed "good empty capacity and decreased bladder spasm" and did not "document significant functional restrictions resulting from any impairment." *Id.*

Using such evidence, ALJ Shelton concluded that Plaintiff's representations "concerning the intensity, persistence, and limiting effects" of her symptoms were ultimately inconsistent with the preponderance of medical evidence. (Tr. at 696–99). Nevertheless, based on Plaintiff's testimony,

ALJ Shelton found Plaintiff was more limited than the reviewing medical consultants assessed and ALJ Shelton limited Plaintiff to sedentary work. (Tr. at 699). Here, too, even if this Court accepts Plaintiff's argument that treating physician opinions, such as Dr. Ho's, were ignored, Plaintiff fails to explain how considering such medical evidence would have changed the outcome.

Missing from Plaintiff's brief are citations to the record to make the argument against ALJ Shelton's decision. Plaintiff does not point to evidence that contradicts ALJ Shelton's findings to make an argument that Plaintiff meets a specific impairment from the Listing of Impairments that the ALJ failed to recognize. Plaintiff does not attempt to articulate that she could have met her burden of proof of a disability. Also, Plaintiff does not point to specific statements from treating physicians to argue that ALJ Shelton's RFC determination should have been different. Indeed, ALJ Shelton found Plaintiff could only perform limited sedentary work—a departure from the full range of light work ALJ Yatron found that was subsequently vacated. (Tr. 697.) Plaintiff simply has not demonstrated that she was prejudiced by ALJ Shelton's decision and does not show an error occurred amounting to harm.

Accordingly, Plaintiff fails to provide the evidence behind her contentions required to meet her burden to show how an alleged error was harmful. Further, this Court finds that ALJ Shelton's decision was supported by substantial evidence.

For similar reasons, Plaintiff's second argument is unpersuasive. Despite Plaintiff arguing that the ALJ did not consider her testimony about the nature and severity of her impairments, the record shows otherwise. Plaintiff claims that "not a word of the testimony at the August 15, 2013 hearing is recited, recounted, assessed, accepted, or rejected." (ECF No. 14 at 24.) Here, again, Plaintiff's assertion is undermined by ALJ Shelton's decision. ALJ Shelton found "[b]ased on the [Plaintiff's] previous testimony" that she was more limited than what the prior ALJ determined—

referring to Plaintiff's August 15, 2013 testimony. (Tr. 699.)

In arguing the ALJ improperly rejected Plaintiff's subjective complaints of pain because the decision does not recite Plaintiff's testimony, that fact alone would not mean that the ALJ overlooked Plaintiff's testimony. (Tr. 697–99.) The ALJ discussed evidence about Plaintiff's "neck pain and discomfort that has gradually worsened with radiation to both arms," Plaintiff's reduced range of motion in her cervical spine, she attended physical therapy, and she received a series of cervical epidural steroid injections at some length in the decision. (Tr. 697–99.)

ALJ Shelton also acknowledged Plaintiff's testimony regarding her restrictions from December 11, 2009 through May 15, 2011, and found it inconsistent when compared to the medical opinions of treating physicians included in the record. (Tr. 697–98). Indeed, ALJ Shelton acknowledged Plaintiff suffered from significant back pain in May and April 2011 and self-reported extensive history of neck problems. (Tr. 568). In reviewing ALJ Shelton's decision, this Court is satisfied that the conclusion is supported by substantial evidence and ALJ Shelton reasonably considered Plaintiff's testimony.

## V.   CONCLUSION

For the reasons set forth above, this Court finds Plaintiff failed to show that ALJ Shelton erred in her decision or that Plaintiff was harmed by any errors. The Commissioner's decision is **AFFIRMED**.

Date: March 31, 2021   /s/ Brian R. Martinotti
  **HON. BRIAN R. MARTINOTTI**
  UNITED STATES DISTRICT JUDGE